UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES L. HATFIELD and
DEBORAH K. HATFIELD,
as parents and natural guardians of
T.H.,

    Plaintiffs,

vs.

CASE NO.

THE SCHOOL DISTRICT OF
SARASOTA COUNTY, FLORIDA;

JURY TRIAL DEMANDED

and

DIANA O'NEILL,

    Defendants.
_____/

## COMPLAINT

Plaintiff JAMES L. HATFIELD and DEBORAH K. HATFIELD, as parents and natural guardians of T.H., sue Defendant the School District of Sarasota County, Florida and Diana O'Neill, demands trial by jury and allege:

### JURISDICTION AND VENUE

1. This is an action for damages and injunctive relief arising from Defendants' violation of T.H.'s rights guaranteed under the Fourteenth Amendments to the United States Constitution. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §1983.

2. This Court has jurisdiction pursuant to 28 U.S.C.§§ 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to the claims occurred in Sarasota County, Florida.

4.  The case or controversy is appropriately heard in the Tampa Division of the Middle District of Florida pursuant to Middle District Local Rule 1.02(c), as the Tampa Division encompasses the counties having the greatest nexus with the causes of action and claims of the Plaintiffs.

## PARTIES

5.  Plaintiffs James L. Hatfield and Deborah K. Hatfield are the parents and natural guardians of T.H., a minor, and bring this action on her behalf. At all material times, Plaintiffs were married, citizens of the United States and the State of Florida and residents of Sarasota County, Florida.

6.  The School District of Sarasota County, Florida is ("Sarasota School District") "a unit for the control, organization, and administration of schools," under section 1001.30, Florida Statutes.

7.  Diana O'Neill is, on information and belief, a resident of Sarasota County, Florida, and at all material times, was a teacher employed by the Defendant Sarasota School District.

## FACTUAL ALLEGATIONS

8.  All conditions precedent to the maintenance of this action have occurred.

9.  T.H., born in 1996, has Hemimegalencephaly, a severe brain disorder, which in her case, is marked by the failure of the left side of her brain to develop normally

prenatally. As a result, she was born cortically blind and has never developed the ability to speak or walk. She also suffers from seizure disorder, and at the age of thirteen years has the mental and intellectual abilities of a child of one year of age. T.H., who is wheelchair-bound, requires care and assistance 24 hours a day, and her condition will never improve.

10.   From approximately 1999 until February 2008, T.H. was a student at Venice Elementary School, a school in the Sarasota School District, and Defendant O'Neill was T.H.'s teacher for approximately the last six years. At all times, Defendant O'Neill was employed by the Sarasota School District.

11.   During the time that Defendant O'Neill was T.H.'s teacher, T.H. often vomited in school and came home with bruises, and Mr. Hatfield asked O'Neill to explain, but O'Neill had a different explanation that ranged from other students hitting her to her falling out of her wheelchair.

12.   Unbeknownst to Plaintiffs until she was arrested in 2008, Defendant O'Neill exhibited sadistic behavior and derided the disabled students she taught, including T.H.. O'Neill once told colleagues that one of her students' mouth looked like a "butthole." O'Neill called other students "retards" and "idiots." Defendant O'Neill regularly referred to T.H. as a "fat ass" and "tons of fun" and stated that she was a "waste of air" or that all "she was doing was sucking up oxygen."

13.   A complaint against Defendant O'Neill was made in 2002 when Defendant O'Neill was observed screaming at a disabled student and calling the student "stupid" and "idiot." The teacher who observed this wrote a memorandum and sent it to a superior, but the

memorandum was not placed in O'Neill's public personnel file, and Defendant Sarasota School District created no documentation indicating that anyone followed up on it.

14.   In 2005, a teacher and a classroom aide observed Defendant O'Neill shove a plastic card into a child's mouth so hard it caused him to bleed. The teacher reported it to Venice Elementary School Principal Theresa Baus, who called her superior for advice. No record of the incident was created and no action was taken other than for Baus to tell O'Neill not to injure her students. Later that year, another aide told school therapists that she saw O'Neill jam a spoon into a student's mouth so hard she caused it to bleed, and on another occasion witnessed O'Neill forced an unsteady child to stand behind a chair until he fell down. Again, these actions went uncorrected and O'Neill suffered no adverse consequences. As a result, Defendant O'Neill was emboldened to mistreat her disabled students who could neither protest nor report her actions, and O'Neill said on more than one occasion that in her classroom, O'Neill was "God."

15.   Parents complained in writing about Defendant O'Neill in January 2007 to Venice Elementary School officials when their children came home with bruises. Still, Defendant Sarasota School District took no action.

16.   In October 2007, Principal Baus was advised of other acts of violence by Defendant O'Neill against students. On at least two occasions, Baus talked to Defendant O'Neill about her behavior and warned her not to hit or hurt the students, but never documented the warnings or the incidents of violence or injuries to the students. Baus also did not report the concerns to the state abuse hot line or document any of these incidents in O'Neill's personnel file. Instead, Baus allowed O'Neill to remain in the classroom for three months, while teachers' aides kept a detailed log of instances in which O'Neill abused her students. The log documents more

than a dozen instances in which O'Neill kicked, pushed and hit the students. None of the teachers' aides who witnessed O'Neill violence against the disabled students ever called the Child Abuse Hot Line, as required by Florida law, some of whom claimed they did not know such a report was required.

17. Finally, in January 2008, after two classroom aides came forward with a log detailing numerous instances of abuse, Principal Baus called the Child Abuse Hot Line after being ordered by her superiors to do so.

18. The teachers and teachers' aides reported Defendant O'Neill engaged in numerous acts of violence, including the following:

    a. O'Neill kicked one disabled student in the legs, hit her in the head with objects, pushed her to the floor and used a weighted blanket and a "body sock" -- two therapy tools that restrict movement -- to punish her.

    b. On another occasion, O'Neill told the same disabled student to get out of a chair and gave her "a good push," causing the student to trip and hit her head on the floor so hard she cried. The student went to the school nurse, who filled out an incident report based on what O'Neill told her -- that the girl "tripped on chair leg -- fell backwards on floor."

    c. Teachers' aides observed O'Neill strike the disabled student numerous times with various objects, including a board, a binder and a water bottle. On another occasion, O'Neill pushed the student and she hit her head on a metal door frame, causing a visible bump, but O'Neill reported the girl "fell into a wall" and was not hurt. A week later, O'Neill got out a weighted blanket and wrapped up the student from head to toe with her hands at her side and then let her go. The girl lost her balance and hit her head as she fell to the floor.

   d. O'Neill allowed another disabled student, suffering from autism, seizure disorder and developmental delay and possessing the abilities of a 15- to 24-month-old child, to bang his head against the wall, after O'Neill placed him in his wheelchair into the corner because he conducted himself in a manner O'Neill did not like at lunch. O'Neill responded by saying, "don't hit your head," but allowed him to continue.

   e. O'Neill also twisted this student's arm behind him or twist fingers until he cried out in pain.

   f. O'Neill hit another male student in the head, even though he suffered from seizure disorder. That student also often came home from school with bruises on the back of his thighs. Teachers' aides observed O'Neill hit him in the head with a variety of objects, kick him in the buttocks, slap him and pull a rag from his mouth so hard that it removed a tooth. O'Neill also used a gait belt as a leash that left bruises and scratches on the student's back and neck.

   g. Teacher's Aide Tamara Cooke observed Defendant O'Neill pull a board out of her desk and strike students on their heads, causing them to whimper and cry.

   h. Cooke also observed Defendant O'Neill place a student in a "body sock," a tight-fitting cloth designed to assist children with sensory issues, but O'Neill covered the student's face and pushed her to the ground where the student repeatedly hit her head on the floor and on the base of a swing while struggling to free herself.

   i. At times, when Defendant O'Neill became annoyed with a disabled student, she would place them under a weighted blanket as punishment. Other times, she hit disabled students with the weighted blanket. On other occasions, she would place students in a device described as a "cloth tunnel," which simulated confinement and terrified the students.

j. On another occasion, when a disabled student bit down on a washcloth, Defendant O'Neill pulled it out of his mouth with such force that it pulled out one of his teeth. On yet another occasion, a student was observed by an aide bleeding from the mouth, with a missing tooth, and when the aide asked Defendant O'Neill what happened, O'Neill denied knowing anything.

k. In October 2007, two aides advised nurse Mary Pillsbury that Defendant O'Neill lied about how two disabled students got hurt. One came to the clinic with scratches on his neck, which O'Neill claimed were from a seat belt, but the aides said they saw O'Neill put the student in a harness and "yank him." In the other case, the aides reported that O'Neill pushed a disabled student to the ground, causing her to hit her head, but O'Neill told the nurse that the student "lost her balance and fell."

l. When a disabled student kicked her, Defendant O'Neill threatened to kick the student to show the student how it felt. When a disabled student refused to eat, Defendant O'Neill pinched her nose to force the student to open her mouth and then shoveled food in. Defendant O'Neill twisted students' hands and fingers to prompt reactions or to show O'Neill's displeasure with the students.

m. Defendant O'Neill's students suffered bruising, red marks and swellings and bleeding as a result of Defendant O'Neill's unreasonable and unnecessary violent acts against them

19. During the period of time when Defendant O'Neill was T.H.'s teacher, and within the last four years, Defendant O'Neill excessively and unreasonably used physical force to inflict pain on and injure T.H.. Defendant O'Neill slapped, pinched, poked and shoved T.H. when T.H.

did not respond to Defendant O'Neill's commands in a manner that Defendant O'Neill demanded or when Defendant O'Neill became frustrated with T.H.'s actions or inactions. On another occasion, she intentionally tore skin from T.H.'s lip, causing her to bleed. While feeding T.H. on one occasion, she used such unnecessary force with utensils as to cause T.H.'s gums to bleed. T.H. routinely had bruises on her body from these batteries and routinely became so ill while being mistreated that she would vomit. Defendant O'Neill inflicted unnecessary and unreasonable force and pain on T.H. by hitting her in the head with a plastic bottles and binders and wooden boards. O'Neill hit T.H. with a backhand in the head, even though T.H. has a soft spot from having half of her brain removed when she was 11 months old.

### COUNT I
### VIOLATION OF FOURTEENTH AMENDMENT
### AGAINST DEFENDANT SARASOTA SCHOOL DISTRICT

20. Plaintiffs reallege paragraphs 1-19.

21. This Count, under 42 U.S.C. §1983, is against Defendant Sarasota School District.

22. Where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, liberty interests guaranteed by the Fourteenth Amendment to the United States Constitution are implicated.

23. Each of the acts or omissions alleged against Defendant Sarasota School District or Defendant O'Neill were under color of state law.

24. Because T.H. is physically and mentally helpless, incapable of responding to Defendant O'Neill's unreasonable demands or acting in a manner consistent with her mental, physical and intellectual incapacities, Defendant O'Neill's actions in slapping, poking, tearing

her flesh and otherwise battering T.H. intruded into T.H.'s personal privacy and bodily security with such brutality, and was so demeaning and harmful, that it violated T.H.'s rights under the Fourteenth Amendment of the United States Constitution. The force Defendant O'Neill applied repeatedly over several years was unreasonable and unnecessary and caused physical or mental injuries, was disproportionate to the need presented, and was inspired by malice or sadism, and thus, amounted to a brutal and inhumane abuse of official power.

25. Defendant Sarasota School District, supervisor of Defendant O'Neill, had actual or constructive knowledge that Defendant O'Neill had violent propensities and was a threat to students, and followed a policy or custom of tolerating or ignoring the risk Defendant O'Neill posed, and thereby exhibited indifference to the safety of students who were likely to be harmed by Defendant O'Neill.

26. Defendant Sarasota School District has an official policy prohibiting teachers from using any unnecessary force against students. On numerous occasions, however, Defendant O'Neill was observed committing violent acts against students, and Defendant O'Neill's supervisors had a custom or practice of tolerating Defendant O'Neill's actions. Florida law requires teachers or education professionals who suspect child abuse to report it to the Department of Children and Families abuse hot line. Defendant Sarasota School District has a custom of hiding child abuse or not documenting child abuse, thereby directly creating a danger to disabled students.

27. Defendant Sarasota School District is liable for the actions of O'Neill because it had actual or constructive knowledge of O'Neill's violence against students and violent propensities and a custom, policy or practice of tolerating or ignoring the risk O'Neill created and

exhibiting indifference to the safety of its students who were likely to be harmed by O'Neill.

28. As a result of Defendant Sarasota School Districts acts and omissions and O'Neill's violent actions, T.H. has suffered physical and mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and she will suffer the losses in the future.

WHEREFORE, Plaintiffs, as parents and natural guardians of T.H., demand trial by jury, judgment for damages, punitive damages, interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other and further equitable relief as this Court deems appropriate.

## COUNT II
## VIOLATION OF FOURTEENTH AMENDMENT
## AGAINST DEFENDANT O'NEILL

29. Plaintiffs reallege paragraphs 1-19.

30. This Count, under 42 U.S.C. §1983, is against Defendant O'Neill.

31. Each of the acts or omissions alleged against Defendant O'Neill were under color of state law.

32. Where school authorities, acting under color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain, liberty interests guaranteed by the Fourteenth Amendment to the United States Constitution are implicated.

33. Because T.H. is physically and mentally helpless, incapable of responding to Defendant O'Neill's unreasonable demands or acting in a manner consistent with her mental, physical and intellectual incapacities, Defendant O'Neill's actions in slapping, poking, tearing

her flesh and otherwise battering T.H. intruded into T.H.'s personal privacy and bodily security with such brutality, and was so demeaning and harmful, that it violated T.H.'s rights under the Fourteenth Amendment of the United States Constitution. The force Defendant O'Neill applied repeatedly over several years was unreasonable and unnecessary and caused physical or mental injuries, was disproportionate to the need presented, and was inspired by malice or sadism, and thus, amounted to a brutal and inhumane abuse of official power.

34. As a result of Defendant O'Neill's violent actions, T.H. has suffered physical and mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and she will suffer the losses in the future.

WHEREFORE, Plaintiffs, as parents and natural guardians of T.H., demand trial by jury, judgment for damages, punitive damages, interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988, and such other and further equitable relief as this Court deems appropriate.

## COUNT III
## BATTERY AGAINST DEFENDANT O'NEILL

35. Plaintiffs reallege paragraphs 1-19.

36. This Count, under the common law of the State of Florida, is against Defendant O'Neill.

37. Defendant O'Neill willfully caused a harmful or offensive contact with T.H. without consent or authorization by law or exceeding the force to which she was privileged to use.

38. Defendant O'Neill intended to cause a harmful or offensive contact with T.H. and an offensive contact with T.H. directly resulted.

39. As a result of Defendant O'Neill's violent actions, T.H. has suffered physical and mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and she will suffer the losses in the future.

WHEREFORE, Plaintiffs, as parents and natural guardians of T.H., demand trial by jury, judgment for damages, punitive damages, interest, costs, and such other and further equitable relief as this Court deems appropriate.

## COUNT IV
## BATTERY AGAINST DEFENDANT SARASOTA SCHOOL DISTRICT

40. Plaintiffs reallege paragraphs 1-19.

41. This Count, under the common law of the State of Florida, is against Defendant Sarasota School District.

42. Defendant O'Neill willfully caused a harmful or offensive contact with T.H. without consent or authorization by law or exceeding the force to which she was privileged to use.

43. Defendant O'Neill intended to cause a harmful or offensive contact with T.H. and an offensive contact with T.H. directly resulted.

44. Each of the acts alleged against Defendant O'Neill were performed while she was in the scope of her duties as a teacher employed by Defendant Sarasota School District. Therefore, Defendant Sarasota School District is vicariously liable for the acts of Defendant O'Neill under the doctrine of respondeat superior for the intentional acts of Defendant O'Neill, its employee, who acted within the real or apparent scope of the Defendant Sarasota School District's business. Defendant O'Neill's acts occurred while she was acting as a teacher, the job

she was employed to perform, and the acts occurred substantially within the time and space limits authorized or required by the work Defendant O'Neill was hired by Defendant Sarasota School District to perform; and Defendant O'Neill's acts were activated, at least in part, by a purpose to serve the Defendant Sarasota School District.

45. As a result of Defendant O'Neill's violent actions, T.H. has suffered physical and mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and she will suffer the losses in the future.

WHEREFORE, Plaintiffs, as parents and natural guardians of T.H., demand trial by jury, judgment for damages, interest, costs, and such other and further equitable relief as this Court deems appropriate.

## COUNT V
## VIOLATION OF AMERICANS WITH DISABILITIES ACT
## AGAINST DEFENDANT SARASOTA SCHOOL DISTRICT

46. Plaintiffs reallege paragraphs 1-19.

47. This Count, under the Americans with Disabilities Act, 42 U.S.C.§§ 12131, et seq., is against Defendant Sarasota School District.

48. T.H. is a "qualified individual with a disability," as defined by 42 U.S.C. § 12131(2).

49. Defendant Sarasota School District is a "public entity," as defined by 42 U.S.C. § 12131(1).

50. Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

51. Defendant O'Neill's intentionally battered T.H. because she was unable to speak or communicate and thus was on the basis of her disability. Had T.H. not been disabled, Defendant O'Neill would not have battered her.

52. Defendant O'Neill's actions ultimately forced T.H. to miss classes, transfer schools, and thus, her educational progress suffered. Defendant O'Neill, in the course and scope of her employment, therefore, discriminated against T.H. and deprived her of the benefit of an education on the basis of disability or otherwise excluded T.H. from services offered by the Defendant Sarasota School District.

53. Defendant Sarasota School district is liable for the actions of O'Neill because it had actual or constructive knowledge of O'Neill's violence against students and exhibited intentional indifference to the safety of its students who were likely to be harmed by O'Neill.

54. As a result of Defendant O'Neill's violent actions, T.H. has suffered physical and mental anguish, loss of capacity for the enjoyment of life, and other monetary damages. The losses and expenses are permanent and continuing and he will suffer the losses in the future.

WHEREFORE, Plaintiffs, as parents and natural guardians of T.H., demand trial by jury, judgment for damages, punitive damages, interest, costs, and attorney's fees, pursuant to 42

U.S.C. § 12133 and 29 U.S.C. §794a(2)(b), and such other and further equitable relief as this Court deems appropriate.

DATED this 26 day of August, 2010.

*signature*

RYAN CHRISTOPHER RODEMS, ESQUIRE
Florida Bar No. 947652
Attorney for Plaintiff
BARKER, RODEMS & COOK, P.A.
400 North Ashley Drive, Suite 2100
Tampa, Florida 33602
Telephone: (813) 489-1001
Fax: (813) 489-1008
E-mail: rodems@barkerrodemsandcook.com